Nicholas ALLEN

v.

STATE.

No. 78–328–Appeal.

Supreme Court of Rhode Island.

Sept. 30, 1980.

Decof, Weinstein & Mandell, Philip M. Weinstein, Martin W. Aisenberg, Elizabeth D. Rode, Providence, for plaintiff.

Dennis J. Roberts, II, Atty. Gen., Harold E. Krause, Sp. Asst. Atty. Gen., for defendant.

## OPINION

MURRAY, Justice.

In 1972, the plaintiff instituted a wrongful–death action on behalf of himself and his minor child against the State of Rhode Island. At trial upon conclusion of the plaintiff's case, a Superior Court justice granted the state's motion for a directed verdict. The plaintiff appeals from the judgment entered, challenging the propriety of the directed verdict and of the exclusion of certain expert testimony.

The evidence indicates that at approximately 1 a. m. on February 12, 1971, plaintiff's wife, Linda Allen, accompanied by two friends, was driving northerly in her automobile on United States interstate Route 95, a public highway, in West Greenwich. Route 95 at that point is a divided highway with two northbound lanes and an additional twelve–foot breakdown lane or shoulder on the right side. Linda was driving her Volvo sedan at a speed of only thirty miles per hour because of patches of ice on the surface of the highway.

Immediately after negotiating a curve and passing exit 6, Linda's car skidded on a patch of ice located in the right travel lane just before the Nooseneck Hill Road overpass. The car turned clockwise while skidding out of control across the breakdown lane. Despite Linda's efforts, her automobile slammed into a concrete bridge abutment that stood two feet beyond the breakdown lane. The car struck the abutment near the driver's door. Somehow when the car came to rest, it was again headed northward. As a result of the accident, Linda suffered very serious injuries, which some days later resulted in her death.

There was no guardrail erected at the site of the bridge abutment. An expert testified that the purpose of a guardrail is to help prevent a vehicle from leaving the roadway and to redirect it away from such roadside objects as bridge abutments.

The plaintiff presented evidence in support of two alternate theories of recovery. In the first count of his complaint he alleged that in light of the state's negligent failure to erect a barrier or guardrail, the unguarded bridge abutment constituted an unreasonably dangerous condition that proximately caused the injuries resulting in his wife's death. In a second count, he alleged that the state's negligent failure to sand or salt the icy highway proximately caused her death. The plaintiff assigns no error with respect to the verdict directed against the second count.

In support of his claim that is the subject of this appeal, plaintiff sought to establish that the state's failure to erect a guardrail to prevent collision with the bridge abutment created an unreasonable risk of harm in light of the reasonable foreseeability that a vehicle could skid off the highway and crash into the bridge abutment. He assigns error to several rulings by which the trial justice excluded expert testimony and documentary evidence.

The plaintiff thought it critical to his case to show specifically how the decedent suffered injuries when her automobile struck the bridge abutment, what the injuries were, how they caused her death, and how a properly constructed guardrail would have prevented her death. He sought to introduce a crash–reconstruction expert's testimony to show precisely what had happened to the decedent upon impact with the bridge abutment and to contrast that occurrence with what probably would have happened to her if her automobile had struck a guardrail instead. The plaintiff sought also to introduce medical records and testimony of the decedent's treating physician to show the nature and extent of her injuries.

The trial justice excluded the proffered testimony in both instances on the ground of irrelevancy. In his view such evidence had "nothing to do with what caused the accident." The basis of that assertion became apparent subsequently when the trial justice elaborated on his decision to direct a verdict in favor of the state. He reasoned then that the presence or absence of a guardrail in the area of the bridge abutment had no causal effect on the happening of the accident. In explanation, he stated that the inanimate bridge abutment "was merely a condition of the area off the highway and could in no way be termed a cause of an event that took place initially on the highway."

The trial justice's view that the absence of a guardrail had no causal effect on the happening of the accident is correct only to the extent that he used the word "accident" to define the act of the decedent's automobile skidding on ice. Certainly, decedent's vehicle went into a skid for a reason independent of the lack of a guardrail. The plaintiff is not, however, suing the state for injuries caused solely by the skid. He claims that the decedent's injuries would have been less severe had a guardrail been in place. In summary, he asserts that he need not have shown that the absence of a guardrail caused the car to go into a skid, but rather that he needed to have established only that the state's failure to erect a guardrail was a concurring proximate cause of the decedent's injuries.

In an action for wrongful death, the plaintiff must, as in any other negligence suit, introduce competent evidence to establish a causal relationship between the defendant's act or omission and the injuries resulting in the decedent's death. *Evans v. Liguori*, 118 R.I. 389, 395, 374 A.2d 774, 777 (1977); *Presley v. Newport Hospital*, 117 R.I. 177, 189, 365 A.2d 748, 754 (1976). In most cases, causation is established by competent evidence demonstrating that but for the defendant's negligence, the decedent's injuries would not have occurred. *Mullaney v. Goldman*, R.I., 398 A.2d 1133, 1136 (1979); *Evans v. Liguori*, 118 R.I. at 396, 374 A.2d at 777. In light of the nature of plaintiff's claim, the expert testimony of the crash–reconstruction expert and the treating physician were directly relevant to the issue of causation. In excluding such evidence on the basis of relevancy, the trial justice abused his discretion. *Cf. Soucy v. Martin*, R.I., 402 A.2d 1167, 1170 (1979) (no abuse of discretion found where trial justice excluded evidence under the collateral source rule).

The plaintiff claims that the trial justice erred in two instances by excluding a highway–construction expert's testimony pertaining to whether the unprotected bridge abutment posed an unreasonable risk of harm. At one point, plaintiff sought to introduce the expert's opinion of the risk to safety posed by the unprotected bridge abutment. Subsequently, plaintiff sought to have the expert testify about safety standards recognized by the highway–construction industry for use of guardrails at bridge abutments.

Relying on *Barenbaum v. Richardson*, 114 R.I. 87, 328 A.2d 731 (1974), and *Glennon v. Great Atlantic & Pacific Tea Co.*, 87 R.I. 454, 143 A.2d 282 (1958), the trial justice excluded the expert's opinion testimony. In *Barenbaum* we reiterated the principles guiding the admission of expert testimony which to a considerable extent lies in the trial justice's sound discretion. We stated that expert–opinion testimony may be ad-

mitted to aid the jury in its quest for truth when

> "the subject matter of the inquiry is one involving special skills and training beyond the ken of the average layman. If all the facts and circumstances can be accurately described to a jury and if the jury is as capable of comprehending and understanding such facts and drawing correct conclusions from them as is the expert, there is no necessity for the expert testimony. The jury in such instances can determine the question just as well as the expert. *See Corning Glass Works v. Seaboard Sur. Co.*, 112 R.I. 241, 308 A.2d 813 (1973); *Enos v. W. T. Grant Co.*, 110 R.I. 523, 294 A.2d 201 (1972); *Palumbo v. Garott*, 95 R.I. 496, 188 A.2d 371 (1963); *Glennon v. Great Atl. & Pac. Tea Co.*, 87 R.I. 454, 143 A.2d 282 (1958); *Fontaine v. Follett*, 51 R.I. 413, 155 A. 363 (1931)." *Barenbaum v. Richardson*, 114 R.I. at 90–91, 328 A.2d at 733.

In *Barenbaum* and *Glennon* the juries, once apprised of all the facts and circumstances, were fully as capable as was the expert of drawing a conclusion on the ultimate issue; and for that reason the expert's opinion would not have materially assisted them. Here the trial justice reached a similar conclusion, stating that there was nothing complicated which had to be interpreted for the jury.

The plaintiff disagrees. In substance, he claims that, in light of the circumstances that the jury would have to consider, the trial justice misapplied the rule concerning admission of expert–opinion testimony. He argues that the jury would have to consider the impact–absorbing nature of a guardrail, the danger of locating a bridge abutment on a flat plane within a few feet of the roadway, the additional hazard posed by an access ramp and resultant merging traffic in the area, and the foreseeability of accidents in such an area. He argues that such factors are at least as technical and specialized as those confronting the jury in *Morgan v. Washington Trust Company*, 105 R.I. 13, 249 A.2d 48 (1969), where we upheld admission of expert–opinion testimony.

We concur with plaintiff's fundamental contention but intend to imply no view on the relevancy of all the factors expressed in his offer of proof. The unguarded bridge abutment, in pictures, appears perfectly safe to the inexpert eye, as did the entranceway that we ruled was a proper subject for expert testimony in *Morgan*. The reasonableness of having no guardrail at that abutment on a divided highway is dependent on variables beyond the ken of laymen, variables that are properly the consideration of a highway–design expert. We thus conclude that, after a sufficient foundation was established, a qualified expert's opinion on this ultimate fact would have assisted the jury.

█ The trial justice excluded as irrelevant the expert testimony concerning standards recognized within the highway–construction industry prior to 1971. In an offer of proof the expert testified that the American Association of State Highway Officials had in 1967 promulgated a standard that guardrails be erected where roadside bridge abutments could not be moved. The state, arguing for affirmance of the trial justice's ruling, does not contest plaintiff's assertion that evidence of standards or custom is relevant to establish the reasonableness of a defendant's conduct. *See Denisewich v. Pappas*, 97 R.I. 432, 436, 198 A.2d 144, 147 (1964). Rather the state contends that the standard promulgated in 1967 is irrelevant to the design of a road constructed several years before 1967.

We are unable to agree. The purported standard in the offer of proof reflects the fact that guardrails can be installed after the initial design and construction of the highway. Thus, we conclude that testimony concerning an industry standard promulgated four years before the accident is relevant to a determination of the reasonableness of the unprotected bridge abutment.

Our foregoing rulings indicate that the trial justice should not have excluded the testimony on the grounds that he set forth. This factor forecloses our consideration of the propriety of his direction of a verdict against the first count in the plaintiff's

complaint because such consideration would occur in the absence of material evidence that on the basis of the record before us, should not have been excluded.

We therefore sustain the plaintiff's appeal on the evidentiary issues, vacate the directed verdict on the first count alleged, and remand the case for further proceedings consistent with this decision.